May it please the Court, Glenn Mertens for Plaintiff and Appellant, Hip Hop Beverage Corporation. I would like to reserve two or three minutes here for rebuttal if necessary, although frankly the issues here are rather narrow and focused, so I'm not sure I'd even use all my time. Beginning with the issue of delayed discovery of Deanna Michelle's alleged fraud, breach of fiduciary duty against Hip Hop, it's obvious from the record that the District Court, looking at the exact same set of facts that the L.A. Superior Court looked at, read a whole series of inferences into the allegations of Hip Hop's third amended complaint and came to exactly the opposite determination as to what was properly alleged or not alleged in that amended complaint. Given the fact that we're talking about an interpretation of California law with regard to this delayed discovery, it is just anomalous that the District Court could say, this is very implausible, it doesn't rise to the level of a Tuomi antitrust pleading, it doesn't rise to the level of a Rule 9 fraud pleading. Well, Mr. Mertens, I think the District Court was troubled as am I. Is it April or May, and what's the explanation for the difference in date? I don't know what you mean by a latent mistake. You need to tell us more about why that was wrong to first allege in the state court case that the discovery was in April. Okay. Your Honor, you raise two issues here. Number one, the District Court decided there was no issue of judicial estoppel with regard to that original Bank of America pleading where the April date came up. I understand that, but what he said was the court is left to speculate as to whether the discovery was in April or in May because there's no explanation in any of the Well, I would respectfully disagree with Your Honor's interpretation, or at least the District Court's interpretation, the way Your Honor has phrased it. In paragraphs 51 and 52 of the Third Amendment complaint, it's alleged that this Rogers Jackson fellow became the Chief Operating Officer, Ms. Michelle's replacement, on April 15, 2012. He didn't even take over operational control of HIPPOP until after that April date that had previously been alleged in the B of A case. I understand that, but this was HIPPOP's largest customer, right? Yes, clearly. Okay. At that time, well, it was HIPPOP's largest military customer. HIPPOP sold these energy drinks in the private sector as well, but this Amham Fizzco company was its largest military customer. Okay. And it's important to remember that the records that were discovered by which HIPPOP could discern that Ms. Michelle had engaged in this breach of fiduciary duty were Ms. Michelle's bank records. The bank records that this Tamara Clark woman was asked to go recover in May, not April, in May, were Ms. Michelle's bank records with Chase and Bank of America. They were not HIPPOP's bank records. HIPPOP's bank records showed these partial payments from supposedly Amham. Ms. Michelle would funnel the real payments from Amham into her bogus accounts with the different names, and then she would have payments made to HIPPOP. So HIPPOP's own records showed, oh, okay, we're getting paid by this Amham company. It wasn't until Mr. Jackson took over on April 15th. We're only talking about a month's period of time here. But it makes a difference because one is within the three years and one is not. No, clearly, clearly, it's important. But you asked how the fraud or the misdeeds came to HIPPOP's attention. Mr. Jackson, I mean, it's alleged in paragraphs 51 and 52 of the 30-minute complaint that Mr. Jackson could not access what was left of Ms. Michelle's computer equipment. Counsel, it sounds like the detail that you're offering to us here is similar to the detail you offered to the district court in oral argument. There's an indication in the district court's record that, as he puts it, you were in effect, I gather it was you, is that correct? Yes. That you were in effect sort of testifying and setting before the court factual material that was not reflected in the pleadings. Was that a fair statement on the district court's part? Not exactly. Judge Fitzgerald asked a series of questions similar to what has been asked here this morning. I filled in these blanks. But the blanks are with reference to the pleadings itself, the paragraphs of the 30-minute complaint. And given that Your Honor raised that point, I mean, frankly, it's sort of the third issue on the agenda here. But even the district court acknowledged that there were facts that apparently would suffice to fill in the blanks in these pleadings, and yet the district court said, I'm not going to give you a leave to amend. What facts would you allege in addition to the statement from the original complaint in state court that reads on April 10, 2012, when in the process of removing items from Michaud's office, HIPHOP's personnel found bank statements and records in the desk used by Michaud during her employment with HIPHOP. These statements and records caused HIPHOP's personnel to become suspicious that Michaud had embezzled funds belonging to plaintiff herself. What additional facts would you have to tell us? In the state court proceedings, frankly, there was a declaration from the counsel who drafted that original Bank of America complaint, this Worley fellow. And he says, that was basically my date. That is not necessarily a factual representation. And as it relates to the... It sure reads like a fact. It's not a legal argument. No, no. I mean, it was alleged as... Well, I mean, did he just pick this date out of the air? I mean, is this an incompetent lawyer? I don't... Well... Are you blaming it on prior counsel? The date, yes. And he pretty much admitted that before in an affidavit or declaration to the state court. No basis to pick April 10. It just popped into his head. That's effectively what he said. Is that declaration in the record? No, I don't believe it is because it wasn't... I don't think it was submitted to the district court once the matter was removed. When the district court said, you know, how? How did you discover this? Why didn't you offer that? Well, I think we do offer it. As I said, in paragraphs 51, 52 of the Third Amendment complaint, it's clear that Mr. Jackson... But the other side moved, in essence, to dismiss, right? And you could have filed a declaration from the guy saying, you know, that's just wrong. I goofed. Yeah, exactly. Thanks. That was very good. Not planned ahead of time. No. But you didn't do that. That's true. So the district court's left with these two inconsistent pleadings, one using a May date, one using an April date, and the district court is saying, I can't determine which of these two it is, so therefore you have not plausibly alleged that this case falls within the three-year statute of limitations under the delayed discovery rule. Why is the district court wrong on this record in making that conclusion? Frankly, given the way Your Honor just phrased it, plausibly pleaded a belated discovery... Well, it can't... It's got to be one or the other.  Well... Yes, in a way. You want us to pick May because that saves you from sudden death from the statute of limitations guillotine, but April 10, the best you can say is the other dude made it up. Well, no, that's not the best we can say. The best we can say is what is pleaded in the Third Amendment complaint and what I discussed with Judge Fitzgerald at the hearing a year and a half ago. The person who made the determination that there were actual defalcations, embezzlements, was Rogers Jackson, Ms. Mischel's replacement. He did not even become... All this language that I read to you without... Forget about whether it was April or May. All this language that I read to you simply didn't happen in April is what you're saying. There was no removal of items from Mischel's office or found bank statements or records in the desk that she had used by any person... The records... ...employed by Hip Hop in April of 2012 after she quit or got fired. They may well have gotten into her office, which, as I explained, the district court was locked up and she had the only key. But when they got in there, yes, I'm sure they did remove records. They didn't find Ms. Mischel's bogus bank accounts, however. It wasn't until Tamara Clark... That wasn't the basis for the final statement. These statements and records caused Hip Hop's personnel to become suspicious that she'd embezzled funds. How did they reach that conclusion in April of 2012 after rifling through her office? Well, as Mr. Worley said, they may not have become suspicious of an actual embezzlement at that point. I mean, that's pretty strong language. I mean, to me, that's inquiry notice as far as the plaintiff is concerned that Houston, we have a problem. Something's not right here in financial records. Hip Hop did not become aware that it had suffered the injury of embezzlement until this Ms. Clark, Tamara Clark woman, explained on or about May 19th that, oh, you know, by the way, Ms. Mischel had her own bank accounts and then Mr. Jackson says, you know what, go get them. But that's not what the company alleged in its original complaint in Los Angeles County Superior Court. The company alleged what I read. Against Bank of America? I understand what Judge Fitzgerald said. I don't know what to do with these allegations. It can't be both. One's inside the statute of limitations. One's outside the statute of limitations. How does the district court resolve that dilemma? Well, the district court resolved it by saying, we're going to just disregard April. Looking at the allegations of the Third Amendment complaint as pleaded, I still don't find them plausible. And that's why we're here today. Well, what additional fact, if we sent this back to the district court and said you erred in not giving Hip Hop a chance to further amend its complaint, what amendment would you make? What additional facts would you allege today that you did not allege? Frankly, not many. I mean, the facts that the district court's order refers to are things like the records that were discovered in May were Ms. Michaud's bank records, not Hip Hop's records. We wanted to make it clear. And it was those records that Tamara Clark advised Hip Hop about in mid-May. That is what put Hip Hop on to Ms. Michaud's actual embezzlement. I thought those records were returned to Ms. Michaud at her request after she left the employee of the company. Her records that she had at Hip Hop, that was one of the problems. Her records from the Hip Hop office were either returned to her by this Beverly Sorlezano woman, or she just took them. Those records, however, were not her bank account records. Those were company financials. Those were company financials. Those showed sales to Anham, oh, look, we got a little bit here. So is it true, then, that when they finally got into Michaud's office, they found additional personal bank records? No, and I suppose that might be the one extra fact. I think it's alleged here. Well, it just says bank statements and records in the desk used by Michaud. Right, but it was not until Tamara Clark was directed by Mr. Jackson, go to Chase, go to Bank of America. You're apparently on these accounts. Get the bank records. Those are Deanna Michaud's bank records, not Hip Hop's bank records. Has she been prosecuted for this embezzlement? I don't believe she's been prosecuted, no. Nobody even really knows where she is. The company never called the police or the FBI to report the embezzlement? Not that I'm aware of. Why not? It's $3 million? Is that what we're talking about? Roughly, yes. Let the insurance company pay it? Now, unfortunately, the insurance company hasn't paid a dime on this. But why didn't they report it to the police? If I were the victim, I'd want to see her in prison. Just a beverage company, right? Well, right. Okay, all right, all right. In my bit of remaining time, let me speak to the other issue about the aiding and abetting. Whether that is a standalone cause of action that would suffice, even if the statute of limitations issue were dispensed with. The district court and Chase repeatedly refers to this California Corporations Code section, which has absolutely nothing to do with this scenario. 2207 says a corporation cannot be held liable for civil fines and penalties over $1 million unless the acts were done by managing agents and whatnot. That has nothing to do with this case. There are no civil fines or penalties in play here. Ms. Cotton is alleged in the complaint to be a manager, perhaps even a branch manager. What evidence do you have to support that allegation, other than an allegation? She hasn't been deposed. We're just sort of taking a flyer on this? Well, Ms. Michelle was deposed two or three years ago, and she kind of highlighted what her relationship was with Ms. Cotton and what she thought Ms. Cotton's duties were. We tried to subpoena, or not subpoena, we requested Ms. Cotton's personnel records from Chase and got stonewalled prior to the removal. So we haven't seen a job description for her yet. So the allegation is in the hope that she's an agent? Well, it's alleged that she was either a branch manager or had power to determine the policies for the branch there in Ladera Heights.  And determining who would be a, quote, managing agent. You know, they say it's a question of fact. That's not something that the district court can sit there and say, ah, well, we're just going to ignore these allegations. Okay. Thank you very much, counsel. Thank you. Good morning, and may it please the court. Jordan Grotzinger of Greenberg Charred for JPMorgan Chase. I'll try to briefly address the two primary issues, statute of limitations and the knowledge issue on liability. The focus of the plaintiff on the knowledge of injury or the degree of suspicion is irrelevant because under no circumstances can, did they meet the first element of the discovery rule. They acknowledge at the front of their brief that this case is barred as of October 2014, absent tolling under the discovery rule. The discovery rule, and just the general rule, not the one under fraudulent concealment and 9B, requires specific detailed pleading of, one, the time and manner of discovery, and two, the inability to have not discovered earlier. And here there is simply no explanation, despite the efforts even today to explain the manner of discovery. Instead, what this pleading does is just builds up to and enhances the ultimate mystery of the manner of discovery. The records were stolen. The computer was locked. The records were unavailable. And then six days into the limitations period, and not even considering the contradiction with the repeatedly pled discovery date of April 2012, just six days into the limitations period, pop, they became aware of the records. What was wrong with the analysis by the California Superior Court applying California law on this discovery doctrine? What was, apparently you think that analysis was simply wrong. Is that correct? I do, and the reason is because it omitted any reasoning as to why the manner of discovery was properly pled. California law requires detailed pleading of the manner of discovery so that the court can reach element two of the discovery rule and assess whether the plaintiff should have made a discovery earlier. There was a complete omission in the district court's order, and, of course, as set forth in our briefs, the district court, in the Superior Court's order, and, of course, as set forth in our briefs, the district court was entitled to reassess this. But the answer is complete omission of any reasoning as to how the plaintiff pled the manner of discovery. So, as I said, there was just a buildup to this mystery. If the records were stolen and the computer was locked, how did the plaintiff become aware? And there is no answer over four pleadings in the complaint. And that is synonymous with the Cansino case, which was a demur case that was sustained without leave to amend and the court of appeal affirmed. There, the plaintiffs realized the value of their home was X, and that was the trigger for their knowledge. And the court said, realize does not explain how. In this case, realized is synonymous with become aware. There is no explanation, and no case before you suggests that the bald conclusion of becoming aware can possibly satisfy the detailed pleading requirement. Counsel, looking at paragraph 53 of the complaint, which reads, on or about May 19, 2012, plaintiff became aware of records that indicated additional company accounts were maintained at Bank of America and Chase. On May 21, 2012, the company instructed Tamara Clark, an employee to obtain copies of bank accounts. She was then able to obtain the records, and that alerted them to the problem. What more was needed to satisfy the pleading standard as you see it? Anything suggesting how they became aware, but there's nothing. That is the answer. And that does not even consider the implausibility of the prior contradictory allegation, which I don't believe was explained today and has not been explained. The explanation is that the other lawyer made a mistake, that he was just wrong. I don't believe that that satisfies the requirement to plead specific facts explaining the contradiction. If you can just say you're wrong, it would eviscerate the requirement to plead the time and manner of discovery and to plead some facts as to why it's plausible that the lawyer representing Hip Hop, closer in time to when the records were discovered, said repeatedly in court that the discovery was April 12th. Why doesn't this create a genuine issue of material fact as to whether there was, in fact, delayed discovery? Because even without the contradiction, let's take out the prior pleading of discovery of April 12th. There is still no detailed pleading or any pleading of facts as to how the plaintiff became aware six days into the limitations period. The court doesn't even need to contrast the April 12th with the April 12th. But the May allegation does say, we discovered that there were accounts at Bank of America and Chase, and we instructed an employee to go get the records of those accounts. And when we looked at those records, we realized that we had been the victim of an embezzlement. Isn't that enough? No, Your Honor, because, again, there are no facts stating how they became aware. Instead, there are allegations that would suggest they can't become aware. Locked computers, stolen records. And all of a sudden, six days into the limitations period, they become aware. There are no facts in the pleadings as to how they became aware, and that is the manner of discovery requirement. Why does this detail matter so much? What policy is served by requiring all of this detail? Are you arguing that you can't really evaluate the diligence of the company in pursuing the possibility that was wrong without understanding more fully how they became aware? And if we understand that, perhaps they should have been aware earlier. Is that what's at stake here? Yes, that's basically it, Your Honor. The policy behind the discovery rule is to encourage diligence so that plaintiffs prosecute cases before they become stale. And the reason why it's so important is because the law specifically requires detailed pleading of the manner of discovery. And Cansino also says that absent pleading the basis of discovery, the trial court cannot determine when the plaintiffs had actual or presumptive knowledge of the alleged misrepresentations and whether the plaintiffs should have made the discovery sooner. In other words, you need proper facts as to the first element to properly assess the second element, and that is lacking here. And as to the second element, as the district court noted, the second element is the inability to discover sooner. And as the district court correctly noted, the third amended complaint did not clearly explain why those records, the Chase and B of A records, that plaintiffs became aware of were not available for inspection sooner, especially because ultimately they were available. They were accessed allegedly shortly after the limitations period. We just don't know how. And that illustrates the tying of element number one and element number two. You need facts as to the manner of discovery in order to assess the diligence. The suspicion of wrongdoing standard here is broad. It is not tied to particular claims. It is based on whether the plaintiff should have known something was wrong. And in paragraph 53 of the third amended complaint, the fact that Rogers Jackson, the company at the time, tells Ms. Clark to go get the records shows that he was on inquiry notice. But again, while I believe we win on the inquiry notice element, it's not even necessary to rule because there are no facts as to the manner of discovery, the first element. This doesn't even get to fraudulent concealment, which applies here because they allege it. And that makes the standard even harder because when fraudulent concealment is pled, it's got to be pled with particularity. And the elements are basically the same as the discovery rule, but the pleading standard is that much higher. For the reasons discussed, we don't believe it's met. And relatedly, the concealment by one defendant, here Michaud, does not toll the claims as to other defendants, here Chase, that did not participate in the concealment. Now they argue Cotton participated in the scheme, but that's the underlying fraud. To separate tolling, or rather to combine tolling, the other defendant had to have participated in the concealment of the claim, and there are no facts that Cotton participated in that. The scheme to defraud, though, involved the creation of accounts that were close in name to the legitimate accounts. And until you got the records for those, I'll call them dummy accounts or nominee accounts, there wouldn't be any way to compare the true bank records for the legitimate accounts with the corresponding nominee accounts. And that was part and parcel of how the scheme succeeded, is it not? You're right, Judge Tallman, but that really goes to the underlying fraud, and it can't be that... But that's how the conspirators concealed from HIPPOP at the time the fraud was being committed, that the company was being defrauded. Actually, they allege that Michaud concealed it by stealing the records, locking the computer, and making the records unavailable, not the underlying fraud. They allege that Cotton aided and abetted or assisted Michaud by opening accounts in those names, and they further allege that Cotton knew at the time she did that that she was facilitating a scheme to defraud for which she received a portion of the proceeds of the fraud. I understand, but because that relates primarily to the underlying fraud, you'd never have a statute of limitations defense if that was enough. In other words, the defendant who wants the benefit of tolling should also have to participate in the concealment of the claim, as Michaud is alleged to have done here. But I'm suggesting to you that they've alleged that the bank employee did in fact assist in the concealment of the fraud as part and parcel of creating and executing the scheme and artifice to defraud. I understand, Your Honor, and I think I've made my point. But in any event, it doesn't matter because that doesn't relate to the time and manner of discovery or of the second element of the discovery rule, the inability to have discovered sooner. Briefly on the liability for aiding and abetting, Mr. Mertens referred to the corporation's code. We don't even need to talk about that because both sides rely on the punitive damages statute in cases to discuss whether a representative or alleged agent of a company can impute knowledge to the company. And for that, and they rely on the same cases, the agent has to be an officer, director, or managing agent. Here we're talking about a branch manager at a local branch, and there are no facts suggesting that she had the ability to affect corporate policy as the cases holding agents who are managing agents do. And lastly, respondeat superior, which is the theory on which they rely to impute knowledge, they're basically advocating an unprecedented derivative liability squared theory, which does not exist in the law. There are no cases imputing knowledge under respondeat superior and additionally under a derivative liability theory like conspiracy or aiding and abetting. And in fact, where a defendant is required to have actual knowledge, such as a trade secret misappropriator like in the Droger case, there can be no knowledge, imputing of knowledge through a vicarious liability theory because there has to be actual knowledge. Wasn't there a First Circuit case? Wasn't Bank of New England a First Circuit case that said you could attribute knowledge to the corporation from the acts of bank employees who facilitated currency transactions? Which case was that, Your Honor? Bank of New England? I'm going back a few years. I'm looking at my colleague from the First Circuit to see if that one. I'm going to have to disappoint you. Oh, that's not even in the record. It wasn't our case. I'm just about out of time. So I will ask the Court to affirm, I think, that four pleading attempts and the rigorous questioning about what further facts could be pled here show that the Court certainly was within its broad discretion. And I note counsel's answer to your question, Judge Tallman, what else could you plead here? Frankly, not many. We respectfully request that the order be affirmed. Thank you very much, counsel, to both of you for your arguments in this case. This matter is submitted.
judges: Lipez, Tallman, Owens